IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 07-cv-00340-WYD-KLM

SCOTT B. SCHAFER,

    Plaintiff,

v.

REGIONAL TRANSPORTATION DISTRICT,

    Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant Regional Transportation District's ("RTD") Motion for Summary Judgment [# 39], filed on September 20, 2007. Plaintiff Scott Schafer filed a response to RTD's motion on October 10, 2007 [# 42], and RTD replied on October 25, 2007 [# 43]. The motion is fully briefed and ripe for disposition.

**I.    BACKGROUND**

Plaintiff alleges in this action that RTD, his former employer, violated the Family and Medical Leave Act of 1993 ("FMLA") when it terminated his employment on September 2, 2005, shortly after plaintiff requested and was granted leave under the FMLA. The following facts are either undisputed or viewed in the light most favorable to plaintiff, the non-movant.

Plaintiff was employed by RTD on July 10, 2000 as an Electro Mechanic in RTD's Light Rail Division. (Final Pretrial Order [# 47] at 17.) Plaintiff was a member of the Amalgamated Transit Union ("ATU") and subject to the provisions of the Collective

Bargaining Agreement ("CBA") between the ATU and RTD. (*Id.*) Plaintiff remained an RTD employee until his termination in September 2005.

RTD's Attendance Policy provides that employees will be charged with an absence occurrence "for any period of absence during their scheduled shift, with the exception of tardies. . . . In the event that an illness lasts for a consecutive number of days consideration will be given to viewing that as one occurrence." (Ex. C to Def.'s Mot. at 3.) The Policy contains several enumerated exceptions for absences that are "non-chargeable" and thus will not be counted as occurrences, including absences due to on-the-job injuries and FMLA leave. (*Id.* at 4.) An employee can be terminated after receiving ten absence occurrences in a 12-month period. (*Id.* at 4–5; Depo. of RTD Manager Phil Eberl, Ex. 1 to Pl.'s Resp., at 58–59.)

The Attendance Policy also contains requirements for absence reporting, and employees who will be absent "are expected to notify the appropriate supervisor as soon as practicable" and "must notify the appropriate supervisor every day that the employee is scheduled to work and is unable to report to work." (*Id.* at 5.) However, "[e]xtended periods of absence may have a different reporting requirement based upon each case." (*Id.*) In addition to the Attendance Policy requirements, Article 202 of RTD's Performance Code, entitled "Unauthorized Absence from Assigned Duty," provides in part that an employee may violate Article 202 and be subject to discipline if he or she "fails to report for duty at the appointed time and place without prior notification to his or her supervisor." (Ex. E to Def.'s Mot. at 17.) According to a memo issued to employees along with the Attendance Policy, three "AWOL (202) charges could result in termination." (Ex. C to Def.'s Mot. at 1.)

On July 27, 2005, plaintiff received two written warnings from RTD following his seventh and eighth absence occurrences, which occurred on July 14 and 15, 2005. (Ex. B to Def.'s Mot.) Plaintiff was also found at fault for a Class C Article 202 violation and received a written reprimand for being absent on July 14, 2005 "without leave and without prior notification" to RTD. (Ex. D to Def.'s Mot.)

At some point in July 2005, plaintiff requested that RTD provide him with medical treatment for a leg injury he believed was job-related and therefore covered under workers' compensation. (Pl.'s Depo., Ex. A to Def.'s Mot., at 55; Claim Notes, Ex. P to Def.'s Reply.) RTD's Senior Risk Management Specialist, Bonnie Hanford, scheduled an appointment for plaintiff on July 27, 2005 with Dr. Henry Roth, RTD's workers' compensation doctor, and plaintiff subsequently rescheduled the appointment for August 11, 2005. (Pl.'s Depo. at 56; Ex. P to Def.'s Reply.) Prior to plaintiff's shift on Thursday, August 4, 2005, which was his last scheduled shift of the week,[1] plaintiff notified one of his supervisors that he would be absent that day due to pain from the same leg injury. (Ex. 8 to Pl.'s Resp. at 5.)

On Friday, August 5, 2005, plaintiff called RTD and spoke with supervisor Kenny Johnson as well as Bonnie Hanford. Plaintiff testified he told both Johnson and Hanford that he had an appointment on August 11th with Dr. Roth and that he would not be back at work until after that appointment. (Pl.'s Depo. at 136–38.) Johnson, however, informed RTD manager Phil Eberl in an August 9, 2005 email that his understanding

---

[1] At that time, plaintiff worked the graveyard shift such that his shift on August 4, 2005 actually began at 11:30 p.m. on August 3rd and ended at 8:00 a.m. on August 4th. (Compl. ¶ 8.) Because plaintiff's work week was Sunday through Thursday, his next scheduled shift after the August 4th shift was not until Sunday, August 7, 2005. (See Compl. ¶ 8.)

3

was that plaintiff had called about an old on-the-job injury, and that he did not know plaintiff was or would be off work at that time. (Ex. 9 to Pl.'s Resp.) Hanford's claim notes similarly indicate plaintiff did not state he was unable to work at that time. (Ex. P to Pl.'s Reply.) The parties agree Hanford informed plaintiff that any absences would be unexcused if Dr. Roth determined his injury was not covered under workers' compensation. (*Id.*; Pl.'s Depo. at 57.)

Plaintiff did not call RTD before either of his next two scheduled shifts on August 7th and 8th. (Pl.'s Depo. at 137.) He testified that he "[d]idn't think [he] had to" because he had already told Johnson and Hanford when he called on August 5th that he would be out through August 11th. (*Id.* at 136–37.) On August 8, 2005, after plaintiff did not report to work for his second shift that week, Eberl called plaintiff and left a message stating that he was aware plaintiff had "called in one night for a OJI [on-the-job injury]," but that RTD had been "expecting [him] at work the last couple of nights." (Ex. G-1 to Def.'s Reply at 7; Pl.'s Depo. at 135.) After speaking with plaintiff later the same day, Eberl emailed several RTD supervisors to inform them plaintiff would "be off on OJI the rest of the week." (Ex. 7 to Pl.'s Resp.; Pl.'s Depo. at 135–36.)

Plaintiff attended his appointment on August 11, 2005 with Dr. Roth, who concluded that plaintiff's injury was not work-related. (Pl.'s Depo. at 56–57; Ex. 23 to Pl.'s Resp. at 7.) Plaintiff was concerned that his absences would be unexcused and scheduled an appointment for the following day, August 12th, with his personal physician, Dr. Andrew Sarka. (Pl.'s Depo. at 57.) Dr. Sarka gave plaintiff a note excusing his absences, and plaintiff delivered the note to Johnson at RTD the same day. (*Id.* at 57–59.) Johnson told plaintiff the note may not be sufficient because it did

4

not state a general nature of illness or that plaintiff was okay to return to duty.[2] (*Id.* at 59–60.) At that time, plaintiff and Johnson both thought the note said to excuse plaintiff from work due to a "situation"; it was later determined that the note said "sciatica." (*Id.* at 59.)

Plaintiff also spoke to Gregg Fisher, RTD's Labor Relations Manager, on August 12, 2005, and recorded their phone conversation. (Pl.'s Depo. at 61–62.) Fisher informed plaintiff that the doctor's note he had provided was insufficient to authorize sick pay or to excuse his absences and reiterated that RTD needed a note stating a general nature of illness and that plaintiff was capable of returning to work. (*Id.* at 61; Ex. G to Def.'s Mot. at 10–11.) Fisher stated plaintiff could not return to work at that time based on the limited information provided and indicated that, depending on the additional information RTD received on plaintiff's condition, RTD may require plaintiff to undergo a return-to-work examination. (Ex. G at 16–17.) Fisher also told plaintiff he may qualify for FMLA leave, which would excuse his absences. (*Id.* at 10–11.) Fisher emailed plaintiff the FMLA paperwork the same day. (Ex. H to Def.'s Mot.; *see also* Pl.'s Depo. at 87–88.)

After his conversation with Fisher, plaintiff scheduled an appointment for Tuesday, August 16, 2005 with Dr. Sarka, who gave plaintiff another note excusing him from work "due to illness" through August 18, 2005 and stating that he "may return to

---

[2] Pursuant to the CBA, RTD could require employees who were absent for three consecutive days due to illness or injury to provide written medical documentation that included a "general nature of illness" and the date the employee was seen by the provider. (CBA art. II, § 8(a)(10), Ex. F to Def.'s Mot.) The CBA also provides that an employee returning to work after medical leave must have a written release from a physician stating that the employee is able to perform the duties of his job, and permits the employer "to request that the employee submit to an examination by a medical doctor of the [e]mployer's choosing and at the [e]mployer's expense." (*Id.* art. II, § 8(b)(1).)

work [August 19th] full duty." (Ex. 18 to Pl.'s Resp.; Pl.'s Depo. at 63, 67.) Plaintiff delivered the note to RTD on August 16 or 17, 2005. (*Id.* at 70–71.) Fisher informed plaintiff that the note was still insufficient and arranged for him to undergo a return-to-work examination with Dr. Eric Tentori at Concentra Medical Center on Friday, August 19, 2005. (*Id.* at 79–80.)

During the examination, Dr. Tentori asked plaintiff to list the medications he was taking, and plaintiff asked Dr. Tentori why he needed to know that information. (*Id.* at 81.) Plaintiff testified that, while he was trying to remember the names of his newly prescribed medications, Dr. Tentori said, "If you're not going to be forthcoming, I have better things to do." (*Id.*) Plaintiff did not respond, and Dr. Tentori told plaintiff to "[g]o talk to RTD" and walked out of the room. (*Id.* at 81–82.) Plaintiff then left the office. (*Id.* at 84–85.) Later the same day—August 19, 2005—Fisher informed plaintiff they had a "problem" based on Fisher's understanding that plaintiff had "refused to participate in the return to work evaluation." (Ex. 10 to Pl.'s Resp. at 27; *see also* Pl.'s Depo. at 85.)

On August 22, 2005, RTD issued three types of disciplinary charges against plaintiff: (1) three absence occurrences for his absences on August 4th, 7th, and 8th (*see* Notifications of Attendance Infractions, Ex. I to Def.'s Mot.); (2) two violations of Article 202 of the Performance Code on August 7th and 8th for "fail[ure] to appear at your appointed place of duty at the prescribed time, effectively absenting yourself from duty without leave and without prior notification to the District or your Supervisor" (*see* Notifications to Answer Charge, Ex. J. to Def.'s Mot.); and (3) a violation of Article 208 of the Performance Code for refusing to cooperate during the return to work exam,

6

thereby "deliberately ma[king] your services unavailable" and "engaging in a work stoppage."[3]  (*See* Notification to Answer Charge, Ex. K to Def.'s Mot.)  At the time these charges were issued, plaintiff had not completed any of the FMLA paperwork or submitted an FMLA leave request to RTD.

Also on August 22, 2005, plaintiff met with Eberl to receive the charges and recorded their conversation.  (Pl.'s Depo. at 107, 116; Ex. G to Def.'s Mot. at 33–36.)  During the meeting, Eberl orally informed plaintiff that he was being charged with (1) the absence occurrences on August 4th, 7th, and 8th "due to your condition[] not being excused," (2) unauthorized absence from assigned duty (Article 202 violation) on August 7th and 8th "because you didn't call in," and (3) a violation of Article 208 "for not cooperating with the doctor . . . ."  (Ex. G at 33.)  Eberl told plaintiff he had six days to answer the charges and that he could come back to work in the meantime only if he rescheduled the appointment with and got clearance from the RTD doctor.  (*Id.* at 33–35.)  Plaintiff told Eberl he believed the doctor had been biased against him and that he did not want to release any personal information that would be provided to Fisher.  (*Id.*)  Plaintiff did not reschedule the return-to-work exam.

On August 30, 2005, plaintiff met with Eberl to submit his written responses to the disciplinary charges.  (Pl.'s Depo. at 112, 115.)  With regard to the absence occurrences and Article 202 charges, plaintiff's only response was that they were "not received within 6 working days per CBA article I section 9."  (Exs. I & J to Def.'s Mot.)

---

[3] Article 208 provides that an employee may be found in violation thereof for "Contempt of Authority" if "he or she refuses to work under the [CBA] or refuses to obey a proper order from Management. . . .  A Class A infraction [which may result in termination] occurs when an employee incites or participates in any refusal to work in contravention of the Collective Bargaining Agreement then in effect." (Performance Code Art. 208, Ex. E to Def.'s Mot.)

7

In responding to the Article 208 charge, plaintiff reiterated his version of what had happened in Dr. Tentori's office and stated that he had provided a note from his own doctor clearing him for work as of August 19, 2005, but RTD "won't let me" go back to work. (Ex. K to Def.'s Mot.)

When plaintiff met with Eberl on August 30, 2005, he also submitted a request for FMLA leave for August 4, 2005 through August 19, 2005. (Pl.'s Depo. at 91.) Eberl sent the request by inter-office mail to Fisher in Labor Relations, where it was received on August 31, 2005. (*Id.* at 90, 112; Ex. M to Def.'s Mot.) RTD granted plaintiff's leave request, and as a result plaintiff received sick pay for the time period he was on FMLA leave and was found "Not at Fault" for the three charged absence occurrences, which were excused. (Ex. I to Def.'s Mot.; Pl.'s Depo. at 91–92; Fisher Depo. at 219.)

However, on September 2, 2005 plaintiff was found "at fault" for the charges of violating Article 202. (Ex. J to Def.'s Mot.) Based on plaintiff's prior Article 202 violation in July 2005, plaintiff received a Class B infraction and a three-day suspension for the August 7th violation, and received a Class A infraction for the August 8th violation resulting in "immediate termination." (*Id.*; *see* Performance Code Art. 303, Ex. E to Def.'s Mot. (employee may be terminated for Class A violation)). Plaintiff was also found at fault for the charge of violating Article 208 as follows:

> Based on your refusal to comply with the return to work physical requirements and your continued unavailability for work, this is being dispositioned as a class A infraction. Each day of absence from August 19 forward does constitute a continuing violation of your refusal to report to work and/or comply with a directive from the District's representative. Consequently, the disposition of this charge shall be immediate termination.

(Ex. K to Def.'s Mot.)

8

With regard to the Article 208 findings, Fisher testified that Dr. Tentori had called him during plaintiff's examination on August 19, 2005, said plaintiff had refused to provide a list of his medications, and asked Fisher what he should do. (Fisher Depo. at 120, 123.) Fisher responded that, if plaintiff continued to refuse to cooperate, Dr. Tentori should terminate the evaluation and instruct plaintiff to call Fisher. (*Id.* at 121.) Fisher testified that, based on his conversation with Dr. Tentori, he concluded that plaintiff's explanation of the incident was not credible. (*Id.* at 138–39.) Fisher also stated that, in assessing plaintiff's credibility, he took into account a prior incident of plaintiff's being absent from work because of a dispute about a seniority issue and concluded that the incident with Dr. Tentori was "just another way" for plaintiff to protest the seniority system. (*Id.* at 151.)

Plaintiff met with Eberl on September 2, 2005 and was notified that his employment had been terminated based on the dispositions of the Article 202 and 208 charges, which were provided to plaintiff at that time. (Exs. J & K to Def.'s Mot.; Pl.'s Depo. at 115.) Plaintiff filed the underlying action on February 16, 2007. The complaint contains one cause of action, alleging that RTD interfered with plaintiff's right to take FMLA leave and retaliated against him for exercising his rights under the FMLA.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex v. Catrett,* 477 U.S. 317, 322 (1986). When applying this standard, the Court reviews the pleadings

9

and the documentary evidence in the light most favorable to the non-moving party. *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)). In addition, "where the non-moving party will bear the burden of proof at trial on a dispositive issue that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir. 1998) (citation omitted).

### III.   ANALYSIS

As explained in *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002), courts have recognized two theories for recovery on FMLA claims under 29 U.S.C. § 2615(a)—the retaliation or discrimination theory and the entitlement or interference theory. Plaintiff claims he is entitled to recovery under both theories.

   A.   <u>Retaliation Claim</u>

Retaliation against an employee for exercising his rights under the FMLA is prohibited under 29 U.S.C. § 2615(a)(2). In evaluating such a claim, courts apply the analytical framework pronounced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). That framework was summarized by the Tenth Circuit in *Morgan v. Hilti, Inc.* as follows:

> In the summary judgment context, a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations.
>
> After establishment of a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision. If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief. Demonstrating pretext gets plaintiff over the hurdle of summary judgment.

108 F.3d 1319, 1323 (10th Cir. 1997) (internal citations and quotation marks omitted).

### 1. *Prima Facie Case*

To establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in a protected activity under the FMLA; (2) RTD took an action that a reasonable employee would have found materially adverse; and (3) there is a causal connection between the two actions. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). RTD does not dispute that there are material fact issues as to each element of plaintiff's prima facie claim, and the Court will therefore assume for summary judgment purposes that plaintiff has satisfied his initial burden.

### 2. *RTD's Proffered Legitimate, Nondiscriminatory Reason*

At the summary judgment stage, a defendant's burden to articulate a legitimate, nondiscriminatory reason for an adverse employment action "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Furthermore, "the defendant does not at this stage need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory

11

fashion." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994), *abrogated on other grounds by Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003).

RTD argues it discharged plaintiff for two independent reasons: (1) the multiple violations of Article 202 in July and August 2005 for failing to notify RTD that he would be absent from work; and (2) the violation of Article 208 for contempt of authority based on his refusal to cooperate with Dr. Tentori and obtain the necessary clearance to return to work. Plaintiff does not appear to dispute, and the Court finds, that these proffered reasons are not "facially prohibited," and RTD accordingly has satisfied its burden of articulating a legitimate, non-retaliatory reason for terminating plaintiff's employment. *Metzler*, 464 F.3d at 1172.

### 3. Plaintiff's Showing of Pretext

Because RTD has satisfied its burden of production, the burden shifts to plaintiff to present evidence that RTD's proffered reasons for his termination were pretextual, *i.e.*, unworthy of belief, or to otherwise introduce evidence of illegal discriminatory motive. *Beaird v. Seagate Tech.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (citations omitted). Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (citation omitted). However, "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Here, it is undisputed that plaintiff was terminated only two days after he requested FMLA leave. However, such close temporal proximity between the employee's protected conduct and the employer's adverse action, without more, is insufficient to demonstrate pretext. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290 (10th Cir. 2007) (citing *Metzler*, 464 F.3d at 1172). Rather, the employee must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." *Id.* (quotation marks omitted) (emphasis in original).

Plaintiff contends that there is a genuine issue of material fact as to whether a reasonable factfinder could conclude that RTD's proffered reasons for firing plaintiff were false, and therefore pretextual. *See Metzler*, 464 F.3d at 1178 (citing *Reeves*, 530 U.S. at 147 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."), and *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) ("A plaintiff typically makes a showing of pretext . . . with evidence that the defendant's stated reason for the adverse employment action was false . . . .")). The Court agrees.

First, plaintiff testified that he notified RTD (specifically Kenny Johnson and/or Bonnie Hanford) in advance that he would be absent on August 7th and 8th, in contrast to RTD's findings that he had failed to do so in violation of Article 202. (Pl.'s Depo. at 136–38.) In addition, plaintiff's version of what happened during the return-to-work exam with Dr. Tentori differs significantly from the version apparently provided to RTD by Dr. Tentori, which appears to be the principal basis for RTD's finding that plaintiff violated Article 208. (Pl.'s Depo. at 81–85.) RTD has, of course, presented contrary

13

evidence in support of its findings. Thus, there is conflicting evidence regarding the underlying events on which RTD based its decision to terminate plaintiff. Viewing that evidence in the light most favorable to plaintiff, the Court holds that plaintiff has demonstrated that there is a genuine issue of material fact as to whether RTD's proffered reasons for firing plaintiff are pretextual. Accordingly, defendant is not entitled to summary judgment on plaintiff's retaliation claim.

B.  Interference Claim

The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). An interference claim requires proof that (1) the plaintiff was entitled to FMLA leave, (2) some adverse action by the employer interfered with his right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of the plaintiff's FMLA rights. *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005). If the plaintiff establishes the employer has interfered with his right to take FMLA leave, which includes the employer's failing to reinstate the plaintiff following FMLA leave, *Metzler*, 464 F.3d at 1181, then the employer bears the burden of proving that the employee "would have been dismissed regardless of the employee's request for, or taking of, FMLA leave." *Campbell*, 478 F.3d at 1289 (citation and quotation marks omitted). The Tenth Circuit has emphasized that "'an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request.'" *Id.* (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).

14

RTD argues that it has met its burden on the third element and that no genuine issue of material fact exists with respect to its reasons for firing plaintiff. As discussed above, there is conflicting evidence with respect to the veracity and reasonableness of RTD's findings underlying the Article 202 and 208 violations. Because those findings are the only proffered basis for terminating plaintiff's employment, RTD has not shown conclusively that plaintiff would have been dismissed regardless of his request for, or taking of, FMLA leave, *Campbell*, 478 F.3d at 1289, and summary judgment on plaintiff's interference claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [# 39] is DENIED.

DATED: April 28, 2008

BY THE COURT:

*s/ Wiley Y. Daniel*
_____
Wiley Y. Daniel
United States District Judge